771 P.2d 597

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Arvil Howard ELAM, a/k/a Howard
Elam, Defendant–Appellant.**

No. 10051.

Court of Appeals of New Mexico.

Feb. 9, 1989.

Certiorari Denied March 27, 1989.

Jacquelyn Robins, Chief Public Defender, Wade H. Russell, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

Hal Stratton, Atty. Gen., Katherine Zinn, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

BIVINS, Chief Judge.

Defendant appeals his conviction on nine counts of fraud and one count of tax evasion. Defendant raises five arguments on appeal. He claims: 1) the trial court erred by failing to suppress evidence or grant a new trial because the search warrant was not specific and resulted in an unconstitutional general search; 2) the search was invalid due to errors in the manner it was obtained and executed; 3) the trial court improperly instructed the jury on fraud; 4) the trial court improperly instructed the jury on tax evasion; 5) the trial court erred in failing to merge several of the counts

with which defendant was charged; and 6) ineffective assistance of counsel. We identify the claims of trial court error, followed by our answer. We affirm. Only issues one and two meet the criteria for publication under SCRA 1986, 12–405. Therefore, only those issues will be published; the remainder of the opinion, which is incorporated by reference, will be a memorandum opinion and may not be cited as precedent.

The criminal activity for which defendant was charged pertained to a business he operated out of his home, New Mexico Museum Supply and Exploration Co., through which defendant convinced several victims to invest in contrived expeditions for historical artifacts and treasures. Following an investigation, a special agent from the Attorney General's office obtained a search warrant, thirty-five pages in length with a three-page appendix. The agent, along with other agents and several Albuquerque Police Department (APD) officers and detectives, executed the warrant continuously over a three-day period. The agents and officers removed three truckloads of seized items.

1. Did the trial court err in denying defendant's motions to quash the search warrant and suppress all evidence obtained thereby because the search warrant did not particularly describe the items to be seized and, thus, constituted a general search in violation of the federal and state constitutions? No.

■ In addition to describing many specific items, the appendix to the search warrant included the following general language:

The following records, papers, documents or other tangible evidence, including but not limited to, tax forms, records of income and expenses for the Elam's [sic] and for their business, New Mexico Museum Supply and Exploration Company, cancelled checks, invoices, diaries, journals, notes or other records of transactions * * *.

Old books, old papers and maps, whether made of paper, metal, stone or other materials * * *.

Any money whether currency or coin of any denomination, foreign or domestic * * *.

Pieces of paper, whether bound or loose, on which any of the following persons' names or identifiers appear: * * * or any other item that can be shown by its relationship to the aforementioned items or which could or can be used to facilitate the crime of fraud, embezzlement, larceny, forgery, tax evasion, or racketeering.

Defendant recognizes there is ample authority for more general descriptions in a warrant for items and papers when there is probable cause to believe that virtually all of the records of a business are evidence or instrumentalities of fraudulent activity. *See Andresen v. Maryland,* 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976); *United States v. Offices Known as 50 State Distrib. Co.,* 708 F.2d 1371 (9th Cir.1983), *cert. denied,* 465 U.S. 1021, 104 S.Ct. 1272, 79 L.Ed.2d 677 (1984); *State v. Jones,* 107 N.M. 503, 760 P.2d 796 (Ct.App.), *cert. denied,* —— U.S. ——, 109 S.Ct. 561, 102 L.Ed.2d 587 (1988). "The complexity of an illegal scheme may not be used as a shield to avoid detection when the State has demonstrated probable cause to believe that a crime has been committed and probable cause to believe that evidence of this crime is in the suspect's possession." *State v. Jones,* 107 N.M. at 505, 760 P.2d at 798 (quoting *Andresen v. Maryland,* 427 U.S. at 481, n. 10, 96 S.Ct. at 2748, n. 10).

Defendant points out that the latter line of cases concern businesses, not an individual's home. He argues that these cases do not apply here since the home is the locus of a person's greatest expectation of privacy. Defendant cites to general authority on this point.

■ Defendant's claim that greater specificity was required in the warrant since the search occurred at his home is incorrect. *See Lewis v. United States,* 385 U.S. 206, 87 S.Ct. 424, 17 L.Ed.2d 312 (1966) (where outsiders are invited into one's home for purposes of transacting unlawful business, that business is entitled to no greater sanctity than if it were carried on

in a store, a garage, a car, or on the street); *United States v. Cerri,* 753 F.2d 61 (7th Cir.), *cert. denied,* 472 U.S. 1017, 105 S.Ct. 3479, 87 L.Ed.2d 614 (1985) (when used as a place of business, the home has the same status under the fourth amendment as any other place of business).

The degree of specificity required in applying the particularity requirement is flexible and may vary depending on the circumstances and the types of items involved. *See United States v. Offices Known as 50 State Distrib. Co.* (warrant that essentially authorized the seizure of all the business-related books, records, equipment, and merchandise on defendant's premises upheld where probable cause existed to believe that fraud permeated the entire business operation); *State v. Jones; Andresen v. Maryland; United States v. Kail,* 804 F.2d 441 (8th Cir.1986); *United States v. Sawyer,* 799 F.2d 1494 (11th Cir.1986), *cert. denied sub nom. Leavitt v. United States,* 479 U.S. 1069, 107 S.Ct. 961, 93 L.Ed.2d 1009 (1987); *United States v. Wuagneux,* 683 F.2d 1343 (11th Cir.1982), *cert. denied,* 464 U.S. 814, 104 S.Ct. 69, 78 L.Ed.2d 83 (1983).

The affidavit for the search warrant describes defendant's criminal activity as including schemes to convince victims to invest in a variety of contrived expeditions for historical artifacts and treasure. The affidavit details, in thirty-five pages, the theft of historical artifacts and materials, the forgery of authenticating documents, and the acquisition and production of replicas of the artifacts and treasures in order to add authenticity to these schemes. Although the appendix of items to be seized contains some broad categories of items to be seized, considering the nature and extent of the alleged criminal activity involved, the search warrant was sufficiently particular. *See State v. Jones.*

Defendant's reliance on cases holding warrants are inadequate where more specific information is available to the agents that could have served to narrow the scope of the search is misplaced, since defendant's criminal activities extended throughout his business and the range of items utilized to further the business was enormous. *See United States v. Fuccillo,* 808 F.2d 173 (1st Cir.), *cert. denied,* 482 U.S. 905, 107 S.Ct. 2481, 96 L.Ed.2d 374 (1987); *Montilla Records of Puerto Rico, Inc. v. Morales,* 575 F.2d 324 (1st Cir.1978); *United States v. Klein,* 565 F.2d 183 (1st Cir. 1977).

In the instant case the affidavit submitted in support of the search warrant, among other things, recited that defendant had in his possession numerous items of the type specifically described in the appendix to the search warrant. The affidavit sufficiently satisfied the requirements of specificity. *See United States v. Offices Known as 50 State Distrib. Co.*

II. Did the trial court err in denying defendant's motions to quash the search warrant and suppress all evidence obtained thereby because the manner in which the search warrant was obtained, executed, and returned was improper? No.

(1) The gist of defendant's arguments with respect to the manner of obtaining the warrant is that the search warrant is invalid because a special agent of the Attorney General's office is not a law enforcement officer and, thus, does not have the authority to prepare or apply for a search warrant under SCRA 1986, 5–211.

Defendant concedes that the special agents are law enforcement officers with respect to the enforcement of the Controlled Substances Act, NMSA 1978, §§ 30–31–1 to –41 (Repl.Pamp.1987). *See also* NMSA 1978, § 8–5–5 (Repl.Pamp.1983). But defendant argues that since that Act was not involved here, the agents were not law enforcement officers within the meaning of Rule 5–211.

Nothing in Rule 5–211 specifies who may apply for a search warrant. Defendant correctly points out that our rule is modeled after Fed.R.Crim.P. 41, which provides that only "a federal law enforcement officer or an attorney for the government" may request search warrants. Rule 5–211 has no similar requirement. This language was omitted entirely from our codification of search warrant procedure.

■ Appellate courts will not read language into rules which the supreme court did not see fit to add unless it is necessary to conform to the obvious intent, or to prevent absurdity. *See Montoya v. McManus,* 68 N.M. 381, 362 P.2d 771 (1961); *Gutierrez v. City of Gallup,* 102 N.M. 647, 699 P.2d 120 (Ct.App.1984); *State v. Pendley,* 92 N.M. 658, 593 P.2d 755 (Ct.App. 1979). We find no reason to add such a requirement to this rule in the face of this seemingly deliberate omission. Nothing in the rule precludes agents of the attorney general's office to seek out search warrants, so long as law enforcement officers actually execute the warrant. Similarly, we find nothing in the language of Rule 5–211 to indicate that the supreme court intended to preclude agents employed by the attorney general's office from seeking and obtaining search warrants.

Defendant argues also that, because Agent King was not a law enforcement officer, she could not prepare the affidavit supporting the search warrant application. Rule 5–211 clearly answers this to the contrary. Subsection B states: "The warrant shall contain or have attached the sworn written statement of facts showing probable cause for its issuance and the name of *any person* whose sworn written statement has been taken in support of the warrant" (emphasis added). Under this subsection, Agent King could properly prepare the affidavit in support of the warrant.

Defendant contends further, without citing any supporting authority, *see In re Adoption of Doe,* 100 N.M. 764, 676 P.2d 1329 (1984), that "[t]he execution of a warrant begins with the preparation of the warrant and its submission to a judge for issuance." We find this contention to be without merit. "Execution of a search warrant means carrying out the judicial command of the warrant to conduct a search of the premises authorized to be searched." *Mayorga v. People,* 178 Colo. 106, 107, 496 P.2d 304, 305 (1972) (En Banc). *See also* 79 C.J.S. *Searches and Seizures* § 83(a), at 897 (1952) ("A search warrant is executed by making the search directed"); 68 Am.Jur.2d *Searches and Seizures* § 107, at 762 (1973) ("The process of carrying out a search or seizure under the direction of a search warrant is generally referred to as 'executing' the warrant").

Because nothing in Rule 5–211 requires an applicant for a search warrant to be a law enforcement officer, we hold that the agents were permitted to apply for and obtain the search warrant. The warrant was validly requested.

■ (2) Rule 5–211(B) requires that "[a] search warrant shall be executed by a full-time salaried state or county law enforcement officer, a municipal police officer, a campus security officer * * *." Defendant attempts to distinguish *State v. Wise,* 90 N.M. 659, 567 P.2d 970 (Ct.App.1977) (it was immaterial whether Albuquerque police officers had authority to execute warrant because other officers, present and participating, did have the authority), on the basis that all the participants in the search in *Wise* were law enforcement officers and that the legislature could not have intended that a private citizen obtain a warrant and direct law enforcement officers in the execution of the warrant.

Defendant's attempt to distinguish this case from *Wise,* with respect to the execution of the warrant, is unpersuasive. As peace officers, the agents were not ordinary citizens. Moreover, the holding in *Wise* is clear; as long as authorized officers are present and participating, the execution is proper. The evidence at the suppression hearing was to the effect that the APD officers participated in the search and even served the warrant on defendant. Under these circumstances, we believe that this case is controlled by *Wise.* Accordingly, we hold that the search warrant was properly executed.

■ (3) Defendant's theory for reversal that the inventory and return were improperly completed is also without merit. In *State v. Perea,* 85 N.M. 505, 513 P.2d 1287 (Ct.App.1973), this court held that matters of procedure relating to the return of a search warrant are ministerial acts, which, even if defective or erroneous, do not re-

quire a search warrant to be held invalid, unless prejudice is shown. Defendant does not claim any prejudice as a result of the agents completing the inventory and return.

Finally, defendant's motion for a new trial simply restated defendant's arguments for suppression. We find no abuse of discretion by the trial court in denying the motion. *See State v. Smith,* 104 N.M. 329, 721 P.2d 397 (1986).

This completes the only portion of the opinion that is to be published. The remainder shall not be published.

For the above reasons, defendant's convictions are affirmed.

IT IS SO ORDERED.

DONNELLY and APODACA, JJ., concur.